IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KEE ACTION SPORTS, LLC, a Delaware
limited liability company,

                        Plaintiff,

    v.

SHYANG HUEI INDUSTRIAL CO., LTD,
a Taiwan company, dba SUNWORLD
INDUSTRIAL CO., LTD., also dba
DANGEROUS POWER, also dba DP ENGINEERING, and

AMAZONE, INC., a California corporation,

                Defendants.

No. 3:14-cv-00071-HZ

OPINION & ORDER

Craig R. Rogers
Matthew C. Phillips
Renaissance IP Law Group, LLP
9600 SW Oak St., Ste. 560
Portland, OR 97223

    Attorneys for Plaintiff

1 - OPINION & ORDER

Devon Zastrow Newman
Schwabe Williamson & Wyatt, PC
1211 SW Fifth Ave., Ste. 1800
Portland, OR 97204

Thomas J. Daly
G. Warren Bleeker
Drew Wilson
Christie, Park & Hale, LLP
655 North Central Ave., Ste. 2300
Glendale, CA 91203

   Attorneys for Defendants

HERNÁNDEZ, District Judge:

   Plaintiff KEE Action Sports ("KEE") holds several patents related to paintball guns. Defendant SunWorld manufactures paintball guns and sells them in the United States through its distributor, Defendant Amazone (collectively "Defendants"). The parties entered into an agreement under which KEE gave SunWorld a license to manufacture paintball guns that utilized KEE's patents. The relationship broke down, and KEE sued SunWorld and Amazone for patent infringement and breach of contract. SunWorld asserted counterclaims against KEE seeking declaratory relief regarding, among others, the validity of KEE's patents and the enforceability of the licensing agreement. Currently before the Court is KEE's motion to dismiss certain counterclaims and for a judgment on the pleadings. KEE's motion to dismiss Count II is denied because KEE's arguments are grounded in factual disputes that cannot be resolved by a motion to dismiss for failure to state a claim. KEE's motion to dismiss Counts IV, V, and VI is granted because SunWorld failed to plead facts sufficient to satisfy the elements of those claims, and therefore Counts IV, V, and VI of SunWorld's counterclaims are dismissed with leave to amend.

//

//

2 - OPINION & ORDER

BACKGROUND

In 2007, SunWorld entered into a licensing agreement with Smart Parts, Inc., a now-bankrupt company that initially owned or controlled the patents at issue in this case, for the right to manufacture paintball guns which utilized the patented technology. Complaint ("Compl.") ¶ 18; Defendants' Response ("Def. Resp.") at 7. KEE later acquired the Smart Parts patents, and through 2011, SunWorld paid royalties to KEE based on the existing agreement. A dispute arose in 2012 about underreported royalties, which the parties extinguished through a settlement agreement. Exhibit ("Ex.") A to Compl., ECF No. 1-1 at 2–7. At the same time, the parties executed a so-called Amended and Restated Patent License Agreement ("Restated License Agreement" or "Agreement") in which they modified the existing Smart Parts licensing agreement to reflect KEE's acquisition of the patents and a slightly lowered royalty rate to be paid by SunWorld to KEE. Ex. A to Compl., ECF No. 1-1 at 9–18.

The brokered peace was short-lived. SunWorld and Amazone "began to suspect" KEE's patents were invalid, and on July 30, 2012, SunWorld sent KEE a letter claiming that its paintball guns did not infringe KEE's patents, that SunWorld had "no further obligations" under the Restated License Agreement, and would no longer pay any royalties. Ex. I to Compl., ECF No. 1-3 at 21; Def. Resp. at 2. Amazone subsequently filed an application for an *ex parte* reexamination proceeding at the United States Patent and Trademark Office, which the USPTO granted. Def. Resp. at 2.

KEE filed the present suit in January of 2014, alleging patent infringement, breach of contract, breach of the covenant of good faith and fair dealing, and others. Before Defendants filed an answer, the Court stayed the case in June, 2014, and ordered the parties to participate in contractually required mediation. ECF No. 27. After the parties completed mediation without

3 - OPINION & ORDER

resolving the dispute, the Court lifted the stay in July of 2015, and KEE filed its First Amended Complaint, now the operative pleading, shortly thereafter. ECF Nos. 46 & 47. SunWorld answered and asserted counterclaims against KEE, seeking from the Court a declaration that SunWorld's products do not infringe KEE's patents (Count I), that SunWorld is immune from suit for infringement by operation of the Restated License Agreement (Count II), that KEE's patents are invalid (Count III), the KEE has misused its patents (Count IV), that KEE breached the Restated License Agreement (Count V), and that the so-called "no-challenge" clause in the Agreement is unenforceable as a matter of law (Count VI). Counterclaims, ¶¶ 8–42. KEE's present motion challenges the allegations in Counts II, IV, V, and VI as insufficient to support the requested relief and asks the Court to enter judgment against the counterclaims based on the pleadings. Plaintiff's Motion ("Pl. Mot.") at 10.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) asks the court to test the sufficiency of a party's claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002). The court is not, however, required to assume the truth of mere conclusory allegations. Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). A complaint that alleges grounds for relief based on nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will be dismissed. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the plaintiff's

pleaded facts must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The complaint's well-pleaded facts must "permit the court to infer more than a mere possibility of misconduct[.]" Id. at 679.

## DISCUSSION

**1. Whether the Restated License Agreement Remains in Force**

Count II of SunWorld's counterclaims seeks a declaration that the Restated License Agreement between SunWorld and KEE remains in effect and thus SunWorld and its related company, Amazone, are immune from suit for infringement. Counterclaims at ¶¶ 11–16. KEE seeks to dismiss Count II because, it argues, "Defendants[] themselves unilaterally terminated the Restated License Agreement . . . [and] cannot now claim the benefits of that agreement." Pl. Mot. at 4. KEE also asserts that certain patents-in-suit are not subject to the Restated License Agreement and therefore SunWorld cannot use the Agreement to shield itself from infringement claims based on those excepted patents. Pl. Mot. at 5.

At this stage, the Court must assume the truth of SunWorld's well-pleaded factual allegations and construe the counterclaims in its favor. Tannerite Sports, LLC v. Jerent Enterprises, LLC, No. 6:15-CV-180-AA, 2015 WL 5829816, at *1 (D. Or. Oct. 6, 2015) (citing Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983)). SunWorld alleges that the Restated License Agreement is still operative and that KEE has not provided the contractually-required notice to terminate it. SunWorld also alleges that "[a]ny products covered by the patents specifically identified in the Agreement or their related families are still subject to the ongoing license agreement." Counterclaim at ¶ 15. Those allegations are sufficient to survive KEE's motion.

5 - OPINION & ORDER

Whether SunWorld repudiated the Agreement is a question of fact that the Court cannot resolve at this time. See Paulsell v. Cohen, No. CIV-00-1175-ST, 2002 WL 31496397, at *8 (D. Or. May 22, 2002) (laying out the elements of repudiation under Oregon law, and noting that "[w]hether an unequivocal repudiation occurs is a question of fact for a jury.") (citing Jitner v. Gersch Devel. Co., 101 Or. App. 220, 224, 789 P.2d 704, 706 (1990); Standley v. Standley, 81 Or. App. 274, 280, 725 P.2d 397, 400 (1986)) (additional citations omitted). SunWorld's allegations could support the conclusion that it had an implied license for patents not covered by the Agreement. There are numerous legal theories upon which SunWorld could rely to establish the existence of an implied license in spite of the contract's terms. See Sun Microsystems, Inc. v. Versata Enterprises, Inc., 630 F. Supp. 2d 395, 411 (D. Del. 2009). Whether any of those allegations are more probably than not true is a question for a later day.

SunWorld, therefore, adequately states a claim that the Restated License Agreement remains in place and that patents outside of the Agreement could be covered by an implied license. KEE's motion to dismiss Count II of SunWorld's counterclaims is denied.

    **2. Patent Misuse**

KEE moves to dismiss Count IV of SunWorld's counterclaims for patent misuse. Patent misuse is an equitable doctrine that prevents a patent holder from wrongly exploiting its patent to "acquire a monopoly not embraced in the patent." Princo Corp. v. Int'l Trade Comm'n, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (quoting Transparent–Wrap Mach. Corp. v. Stokes & Smith Co., 329 U.S. 637, 643 (1947)). An alleged infringer can successfully raise patent misuse as an affirmative defense by showing "that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." Windsurfing Int'l Inc. v. AMF,

Inc., 782 F.2d 995, 1001 (Fed. Cir. 1986) (quoting Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 343 (1971)).

The doctrine is, however, a narrow one, and its scope is typically "confined to a handful of specific practices by which the patentee seemed to be trying to extend his patent grant beyond its statutory limits." Princo, 616 F.3d at 1329 (citation omitted). The Federal Circuit has further instructed that "the defense of patent misuse is not available to a presumptive infringer simply because a patentee engages in some kind of wrongful commercial conduct, even conduct that may have anticompetitive effects." Id. (citations omitted).

Court have identified certain anticompetitive practices as "constituting *per se* patent misuse, including so-called 'tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good, and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 869 (Fed. Cir. 1997) (citing Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 489 (1942) (tying); Brulotte v. Thys Co., 379 U.S. 29, 33 (1964) (post-expiration royalties)). If the defendant's conduct is not *per se* patent misuse, courts analyze the anticompetitive effect of the challenged conduct using the "rule of reason," that is "whether the questioned practice imposes an unreasonable restraint on competition . . . ." Id. at 869 (quoting State Oil Co. v. Kahn, 522 U.S. 3 at 10 (1997)).

SunWorld asserts that KEE was required to amend claims of patent number 5,881,707 (the '707 patent) to avoid invalidating prior art. Counterclaim Count IV, ¶ 21. According to the counterclaim, KEE filed the amendment, but the USPTO did not apply it before issuing the '707 patent; KEE knew the USPTO did not apply the amendment and has not requested a certificate of correction. Id. at 22–23. Despite that knowledge, KEE included the '707 patent in the

Restated License Agreement and demanded that SunWorld pay for a license. Id. at ¶ 26. SunWorld also broadly asserts that it believes "other patents owned by KEE are also invalid in view of prior art that KEE is aware of." Id. at ¶ 25. Therefore, SunWorld argues, KEE has improperly attempted to leverage its patent power "to project royalty payments beyond the life of the Patent." Def. Resp. at 8.

But even assuming those facts are true, they do not support the conclusion that KEE impermissibly attempted to broaden its patents with anticompetitive effect. See Princo, 616 F.3d at 1329.The Licensing Agreement at issue expressly adopts a narrower universe of paintball gun technology than that which the '707 patent covers. The '707 patent claims, essentially, a pneumatically operated paintball gun. The Licensing Agreement is limited to "any Electronic Paintball Gun that falls with the scope of one or more of the claims of one or more of the Electronic Paintball Gun Patents." Ex. A to Compl., ECF No. 1-1 at 9. "Electronic Paintball Gun" is defined as one that "operate[s] using electricity." Id. In other words, the Licensing Agreement only applies to those paintball guns covered by KEE's patents (including the '707 patent) that are operated using electricity.

A licensing agreement that explicitly applies to narrower scope of technology than that embraced by the contested patent does not suggest that KEE "seemed to be trying to extend [its] patent grant beyond its statutory limits," in either a physical or temporal sense. Princo, 616 F.3d at 1329 (Fed. Cir. 2010); see also Multimedia Patent Trust v. Apple Inc., No. 10-CV-2618-H KSC, 2012 WL 6863471, at *22 (S.D. Cal. Nov. 9, 2012) ("The doctrine of patent misuse is grounded in the policy-based desire to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right.") (citing Princo, 616 F.3d at 1328). Moreover, SunWorld does not allege any facts regarding the anticompetitive effect of

8 - OPINION & ORDER

KEE's conduct. Accordingly, KEE's motion to dismiss Count IV of SunWorld's counterclaim is granted. Although the Court is skeptical that SunWorld can allege facts sufficient to state a viable claim for patent misuse, out of an abundance of caution, the Court dismisses Count IV with leave to amend.

### 3. Breach of Contract

KEE moves to dismiss Count V of SunWorld's counterclaim, in which SunWorld alleges that KEE breached the Restated License Agreement in two ways. First, SunWorld asserts that the Agreement contains a confidentiality clause KEE allegedly violated when it filed a publicly-available copy of the Agreement as an attachment to its initial complaint. Second, SunWorld claims that KEE breached the Agreement by filing suit before submitting its claims to contractually-required mediation. Counterclaims at ¶¶ 28–35.

However, lacking from Count V is an allegation that SunWorld fully performed its own duties under the contract and did not itself breach the Agreement. To state a claim for breach of contract under Oregon law, a claimant must plead "the existence of a contract, its relevant terms, [the claimant's] full performance and lack of breach, and [the opposing party's] breach resulting in damage" to the claimant. Commerce & Indus. Ins. Co. v. HR Staffing, Inc., No. 3:14-CV-00559-HZ, 2015 WL 133677, at *2 (D. Or. Jan. 8, 2015) (quoting Staton v. BAC Home Loans Servicing, LP, No. 6:10–CV–01306–PA, 2014 WL 1803376, at *5 (D. Or. May 6, 2014). Accordingly, KEE's motion to dismiss Count V of SunWorld's counterclaim is granted, and Count V is dismissed.

### 4. Invalidity of the No-Challenge Clause

Finally, SunWorld seeks in Count VI a declaration that a so-called "no-challenge" clause contained in the Restated License Agreement is unenforceable as against public policy.

9 - OPINION & ORDER

Counterclaims at ¶¶ 36–42. The clause provides that SunWorld and its related companies "agree not to contest or otherwise challenge, and agree not to assist others in contesting or challenging, the validity and/or enforceability of the Electronic Paintball Gun patents." Ex. A to Compl., ECF No. 1-1, at 10–11. KEE moves to dismiss Count VI on the grounds that, under Federal Circuit law, a no-challenge clause is enforceable so long as it is clearly and unambiguously stated.

The parties disagree about what circuit law controls this Court's analysis of the validity of the no-challenge clause. SunWorld argues that Ninth Circuit law controls because the enforceability of the clause is a question of contract law not unique to patents. See Rates Tech., Inc. v. Speakeasy, Inc., 437 F. App'x 940, 941 (Fed. Cir. 2011) (granting motion to transfer to the Second Circuit because "[t]he contract dispute does not require the resolution of a related question of patent law, such as inventorship, infringement, validity, or unenforceability.").

KEE asserts, and the Court agrees, that Federal Circuit law controls the question in this case because the issues are "intimately involved in the substance of enforcement of the patent right." Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1365 (Fed. Cir. 2001) (("[W]hether public policy precluding patent license estoppel should extend to a waiver of validity challenges in a settlement agreement[ ] is intimately related with the substance of enforcement of a patent right. Therefore, we will apply our law to these issues."); Serby v. First Alert, Inc., 934 F. Supp. 2d 506, 512 (E.D.N.Y. 2013) (applying Federal Circuit law to the question "whether a settlement agreement bars a party from raising various affirmative defenses against a patent, including patent invalidity, in a subsequent action," despite the agreement's choice of law provision stating New York law governed); Lotes Co. v. Hon Hai Precision Indus. Co., No. C 11-01036 JSW, 2012 WL 2917450, at *2 (N.D. Cal. July 17, 2012) (following Flex-Foot and applying Federal Circuit law in analyzing the enforceability of "Covenant Not to Challenge Defendants' Patents").

Rates Tech is distinguishable because the underlying suit in that case did not present any disputed issue involving a patent. The plaintiff in Rates Tech entered into an agreement with the defendant that barred the defendant from ever challenging or assisting others in challenging the plaintiff's patents. Rates Tech. Inc. v. Speakeasy, Inc., 685 F.3d 163, 165 (2d Cir. 2012). The Rates Tech suit did not arise until a third party filed a declaratory judgment action in a different court challenging the plaintiff's patents as invalid. The plaintiff then filed suit against the defendant in Rates Tech, alleging that the defendant had breached its agreement not to assist others in challenging the plaintiff's patents. Id. at 166. After the district court held the no-challenge clause was invalid, the plaintiff appealed to the Federal Circuit. The Federal Circuit found that it lacked jurisdiction over the case because "the district court's jurisdiction did not arise in whole or in part under the laws governing [the Federal Circuit's] appellate jurisdiction. The contract dispute does not require the resolution of a related question of patent law, such as inventorship, infringement, validity, or unenforceability." Rates Tech., 437 F. App'x at 941. The suit before the Federal Circuit was one purely arising under contract law; the patent claims were raised in a different forum against the third party. The parties in the present suit, by contrast, raise numerous issues of patent law—infringement and invalidity, to name a few—and thus, Federal Circuit law controls. See 28 U.S.C. § 1295 (providing exclusive jurisdiction to the Federal Circuit where a claim or a compulsory counterclaim arises under any Act of Congress relating to patents); Flex-Foot, 238 F.3d at 1365.

Turning to the merits of KEE's motion to dismiss Count VI of SunWorld's counterclaim, the question is whether SunWorld's claim that the no-challenge clause is unenforceable as against public policy is viable under Federal Circuit law. Prior to the Supreme Court's decision in Lear, "a licensee operating under a license agreement was estopped from denying the validity

of the licensed patent in a suit for royalties under the agreement." Flex-Foot, 238 F.3d at 1368 (citing Lear, Inc. v. Adkins, 395 U.S. 653, 656 (1969)). The underlying theory was that "a licensee should not be permitted to enjoy the benefit afforded by the agreement while simultaneously urging that the patent which forms the basis of the agreement is void." Lear, 395 U.S. at 656. The Supreme Court in Lear eliminated this doctrine of "licensee estoppel," reasoning that the "important public interest in permitting full and free competition in the use of ideas" outweighed the "technical requirements of contract doctrine." Id. at 670.

Since Lear, however, the Federal Circuit has found no-challenge clauses enforceable in certain settlement agreements or consent decrees. Flex-Foot, 238 F.3d at 1368 ("[T]he important policy of enforcing settlement agreements and res judicata must themselves be weighed against the federal patent laws' prescription of full and free competition in the use of ideas that are in reality a part of the public domain."). In Flex-Foot, the Federal Circuit held that a "clear and unambiguous waiver" of the right to challenge the validity of licensed patents that was part of an agreement to settle a lawsuit was enforceable:

> Once an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding.

Flex-Foot, 238 F.3d at 1370.

In Baseload, the Federal Circuit held that a no-challenge clause in a settlement agreement did not bar the licensee from attacking the validity of the underlying patent because the agreement lacked the "clear and unambiguous language necessary to effect a release of patent invalidity defenses." 619 F.3d at 1634. The Baseload panel rejected an argument that the Flex-Foot factors were determinative, i.e. that to be enforceable, a no-challenge clause contained in a

12 - OPINION & ORDER

settlement agreement must have resulted from actual litigation on the enforceability of the patent at issue. Id. at 1362–63.

Here, KEE quotes Baseload for the proposition that "clear and unambiguous language barring the right to challenge patent validity in future infringement actions is sufficient, even if invalidity claims had not been previously at issue and had not been actually litigated." Pl. Mot. at 9 (quoting Baseload Energy, 619 F.3d at 1363). But Baseload does not go that far. First, the quote is dicta, as the Baseload panel was discussing a hypothetically "clear and unambiguous" no-challenge clause that was not actually part of the case. See Rates Tech., 685 F.3d at 173 (in which the Second Circuit declines to follow "dicta in [Baseload] suggesting that the existence of prior litigation and discovery between the parties is not required to render a no-challenge clause enforceable."). Second, in the sentence immediately preceding the passage upon which KEE relies, the Baseload court explained that the question whether a particular no-challenge clause is enforceable "must be examined on its own facts in light of the agreement between the parties." Id. at 1363; see also Ocean Tomo, LLC v. Barney, No. 12 C 8450, 2015 WL 5675070, at *12 (N.D. Ill. Sept. 24, 2015) (stating that, after Baseload, "the court must conduct a case-specific inquiry as the language in the parties' agreement and the surrounding circumstances dictate whether the resolution of a dispute is enough to make the settlement exception to Lear apply.") (citing Baseload, 619 F.3d at 1363).

Resolving that factual inquiry is beyond the scope of the Court's task here. Rather, it is sufficient for the present motion to note that Flex-Foot and Baseload make clear that no-challenge clauses can be enforceable under Federal Circuit law, depending on the facts of each case. SunWorld's counterclaim that such clauses are unenforceable as a matter of law does not

state a valid claim, and therefore KEE's motion to dismiss Count VI of SunWorld's counterclaim is granted.

## CONCLUSION

For the reasons stated, KEE's motion to dismiss SunWorld's counterclaims [58] is GRANTED in part and DENIED in part. Count IV, V, and VI of SunWorld's counterclaims are dismissed with leave to amend. SunWorld may submit amended counterclaims which address the identified deficiencies within 30 days of the date listed below.

IT IS SO ORDERED.

Dated this 30 day of December, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge

14 - OPINION & ORDER